Andrew J. WOTKYNS,
Plaintiff/Appellant,

v.

D.E. JONES COMMODITIES, INC.,
Defendant/Appellee.

No. 84–6363.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1985.

Decided June 10, 1986.

John Miller, Wilse, Circuit & Tremblay, La Jolla, Cal., for plaintiff/appellant.

H. Peter Haveles, Jr., Bella Buckley, Cadwalader, Wickersham & Taft, New York City, for defendant/appellee.

Before BROWNING, Chief Judge, WIGGINS and BRUNETTI, Circuit Judges.

PER CURIAM:

Appellant Wotkyns brought an action in district court alleging appellee D.E. Jones Commodities, Inc. violated the Commodity Exchange Act, 7 U.S.C. §§ 1–24 (1982), in handling appellant's commodities account. Appellee moved for a stay pending arbitration pursuant to the contract between appellant and appellee governing the account. The district court granted a stay. Appellant contends the stay was improper because the "consent to arbitration" signed by appellant did not conform with the requirements of 17 C.F.R. § 180.3(b)(6) (1985)

issued by the Commodities Futures Trading Commission (Commission).

Section 180.3(b)(6) was adopted in 1976. It provides that a pre-dispute arbitration agreement must include certain specified language, to assure the investor's agreement to compulsory arbitration is "truly voluntary on the part of the customer." *Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 567 F.2d 1174, 1178 (2d Cir.1977). The required language was modified in 1983 "in order to more clearly and simply convey the significance of the arbitration agreement to the customer." 48 Fed.Reg. 22,140 (1983).

The agreement involved in this case was signed before the 1983 amendment became effective. The agreement included the language required by Section 180.3 when the agreement was executed, but did not include the language as amended in 1983. Appellant claims the amended regulation applied to existing arbitration agreements, and the agreement between appellant and appellee was unenforceable because it did not contain the new language.

When initially adopted in 1976, section 180.3 clearly applied to existing agreements. In proposing section 180.3, and later in announcing its adoption, the Commission stated that all pre-dispute compulsory arbitration agreements that did not satisfy the original rule "will be null and void, *including those heretofore signed by customers.*" 41 Fed.Reg. 27,527–28, 42,944 (1976) (emphasis added).

As the Second Circuit said in *Ames*, any other position "would hardly conform to the notion, stated by the Commission itself, that customers who had entered into agreements before adoption of the regulation needed and were entitled to the protection of the rule no less than those customers who signed agreements after" the effective date of the regulation. 567 F.2d at 1179; *see also Curran v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 622 F.2d 216, 229 (6th Cir.1980).

What the Second Circuit said of the original 1976 regulation applies to the 1983 amendment as well. The purpose of the

amendment was to clarify the notice mandated by the original regulation so it might better achieve its purpose of assuring "that customers make an informed decision" to relinquish their remedies in favor of compulsory arbitration. 48 Fed.Reg. 22,140 (1983). It is precisely this original concern of the Commission that "is reflected in the revised bold face language ... required by new § 180.3(b)(6) in order to more clearly and simply convey the significance of the arbitration agreement to the customer." *Id.* Appellee suggests no reason why the Commission would require the original notice be given to existing as well as future customers, but not impose the same requirement as to the clarifying language.

The industry understood that the Commission intended that existing arbitration agreements be modified to include the amended language. On July 14, 1983, during the interim between the adoption of the 1983 amendment and its effective date, the Futures Industry Association, an organization of future commission merchants and other commodity industry personnel, wrote to the Commission asking its concurrence in certain procedures "to amend *existing* pre-dispute arbitration agreements." On July 22, 1983, the Commission concurred in proposed procedures, reiterating as it did so, that the Association members "will be required by August 15, 1983, to comply with the new requirements of amended Commission Rule 180.3 *with respect to all outstanding arbitration agreements.*" Comm.Fut.L.Rep. (CCH) ¶ 21,818 (Jul. 22, 1983) (emphasis added).

On the day the 1983 amendment was announced, the Commission invited comments on a second proposal to extend application of section 180 to certain classes of dealers not initially covered. 48 Fed.Reg. 22167 (1983). In subsequently announcing adoption of this proposal, the Commission noted that objections had been received "that modification of *existing arbitration agreements* to reflect the requirements of § 180.3 would require [the newly included dealers] to incur additional printing and mailing expenses". 48 Fed.Reg. 41152–53 (1983). The Commission responded "the

expenses associated *with conforming outstanding arbitration agreements* to the requirements of § 180.3 [as amended] may be minimized by adopting procedures previously recommended by the Futures Industry Association ("FIA") to its members, and approved by the Commission, for that purpose." (emphasis added) *Id.* at 41153. We are satisfied that the administrative history of the amendment as reflected in these commission pronouncements, sufficiently evidences the commission's intent that the amendment be construed to apply to pre-existing contracts. *See Ames,* 567 F.2d at 1179.

Appellee points out that the 1983 amendment to section 180.3 was adopted May 17 but did not become effective until August 15 and argues that deferral of the effective date of legislation "would seem anomalous" if retroactive application were intended. *Roth v. Pritikin,* 710 F.2d 934, 939 (2d Cir.1983). But the deferral of a change intended to require modification of existing contracts was not anomalous. The effective date of the initial regulation was also delayed for over sixty days from the date of announcement (from September 24, 1976, to November 29, 1976) although the regulation was expressly applicable to pre-existing agreements. The obvious purpose was to provide a period in which steps could be taken to conform existing contracts to the new requirement in an orderly fashion. The same is true of the deferral of the effective date of the 1983 amendment.

Appellee relies, as did the district court, upon the fact that although the initial regulation did provide expressly for application to existing contracts, the 1983 amendment did not. But, as we have already said, the relationship of the amendment to the rule itself, and the common purpose served by both, compel the implication that the amendment applied to existing contracts just as the original rule had. In this context, as the prompt industry response reflected, the natural inference from omission of specific reference to the matter one

way or the other is the opposite of that suggested by appellant.

Appellant argues that we must compartmentalize the two administrative acts and exclude from our interpretation of the 1983 amendment any consideration of the clearly expressed intention that the 1976 rule apply to existing contracts. This argument suggests, in essence, that we ignore the fact that the 1983 reformulation was indeed simply an amendment of the 1976 rule.

REVERSED.