**Darrel FELKNER, Plaintiff-Appellee,**

v.

**DEAN WITTER REYNOLDS, INC.; Tom Swanson; John Saffrow; Douglas M. McCombs; and John Mitchell, Defendants-Appellants.**

No. 85–5969.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1986.

Decided Sept. 29, 1986.

Barbara Brown, Weinberg, Zipser, Arbiter, Heller & Quinn, Los Angeles, Cal., for plaintiff-appellee.

Michael J. Abbott, Jones, Bell, Simpson, & Abbott, Los Angeles, Cal., for defendants-appellants.

Before FARRIS and CANBY, Circuit Judges, and INGRAM, District Judge.*

CANBY, Circuit Judge:

Dean Witter Reynolds, Inc., and the individual defendants appeal the district court's denial of their motion to compel arbitration of Darrel Felkner's claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1982), and other federal and state laws, and to stay trial proceedings pending the completion of arbitration. Because we conclude that no valid agreement to arbitrate this dispute existed, we affirm.

## BACKGROUND

In 1975, Felkner opened a securities account with Dean Witter. At that time, he signed Dean Witter's standard Customer Agreement, which provided, in part, that "[a]ny controversy arising out of or relating to this contract or breach thereof, shall be settled by arbitration." In May 1982, Felkner began trading commodities through Dean Witter. Although these trades were under the regulatory jurisdiction of the Commodity Futures Trading Commission (CFTC), Felkner never entered into any additional agreement with Dean Witter concerning this new investment activity. During Felkner's 13–month venture into the commodity markets, he allegedly lost more than $265,000.

On June 24, 1984, Felkner filed a complaint against Dean Witter and certain of its employees. Felkner alleged that his losses resulted from numerous unauthorized trades that Dean Witter had conducted. He charged defendants with violations of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1–26 (1982 & Supp. II 1984), and asserted claims for breach of fiduciary duty, fraud, negligence, and breach of contract. Felkner further charged all defendants but Saffrow with engaging in a pattern of mail and wire fraud in violation of RICO.

On August 3, 1984, defendants moved to sever the RICO claim and state law claims, compel arbitration of these claims, and stay court proceedings pending arbitration. The district court denied the motion, holding that Felkner's RICO claim was nonarbitrable and that the state law claims were "so intertwined with the federal Commodities Act claim, and perhaps the RICO claim" that under current law they were

---

* Honorable William A. Ingram, United States District Judge for the Northern District of California, sitting by designation.

not severable.[1] Recognizing that the Supreme Court intended to review our decision in *Byrd v. Dean Witter Reynolds, Inc.,* 726 F.2d 552 (9th Cir.), *cert. granted,* 467 U.S. 1240, 104 S.Ct. 3509, 82 L.Ed.2d 818 (1984), the court noted that it would entertain a motion for reconsideration "[i]f the Supreme Court changes the rule of law" regarding the intertwining doctrine.[2]

On March 4, 1985, the Supreme Court reversed this circuit and refused to adopt the intertwining doctrine. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Defendants filed a motion for reconsideration, requesting again that the district court sever Felkner's RICO claim, order the various claims to arbitration and stay further proceedings pending arbitration. The district court denied the motion, ruling that the arbitration clause relied on by defendants was invalid under CFTC regulations, specifically 17 C.F.R. § 180.3,[3] and that RICO claims are nonarbitrable. Defendants now appeal.

## DISCUSSION

Interpretations of statutes and regulations are questions of law, reviewed here *de novo. United States v. Varbel,* 780 F.2d 758, 761 (9th Cir.1986).

Section 180.3(b) was originally adopted in 1976. It provides that arbitration agreements in the commodities context must include certain language to ensure that an investor's agreement to compulsory arbitration is " 'truly voluntary.' " *Wotkyns v. D.E. Jones Commodities, Inc.,* 791 F.2d

749, 750 (9th Cir.1986) (per curiam) (quoting *Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 567 F.2d 1174, 1178 (2d Cir.1977)).

■ The parties do not dispute that the arbitration clause in issue here fails to conform to section 180.3(b)'s express requirements. Nor do the parties dispute that, for purposes of claims covered by the CFTC regulations, arbitration agreements that do not conform to section 180.3(b) are void. *E.g., Wotkyns,* 791 F.2d at 750; *Smoky Greenhaw Cotton Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 720 F.2d 1446, 1450-51 (5th Cir.1983). Defendants argue, however, that 17 C.F.R. § 180.3 applies only to agreements to arbitrate claims brought under the CEA. Accordingly, defendants maintain that Dean Witter's arbitration clause remains enforceable insofar as it requires the arbitration of Felkner's RICO claims.

We disagree. The plain language of the relevant regulations and statutes makes clear that the CFTC intended that section 180.3 apply to agreements to arbitrate any dispute arising out of commodity futures trading. Section 180.3(a) states:

The procedures [established in § 180.-3(b)(3) ] shall prohibit any agreement or understanding pursuant to which customers of the contract market agree to submit claims or grievances for settlement ... except in accordance with paragraph (b) of this section.

The regulations define "claim or grievance" as *"any* dispute which arises out of

---

1. At the time, this circuit adhered to the so-called "intertwining doctrine." Under the doctrine, a party could not compel arbitration of normally arbitrable claims if they were factually intertwined with nonarbitrable claims. *See Byrd v. Dean Witter Reynolds, Inc.,* 726 F.2d 552 (9th Cir.1984), *rev'd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

2. Because it had found defendants' motion meritless on two other grounds, the district court declined at that point to rule on whether the arbitration clause was valid under CFTC regulations. Because of its refusal to compel arbitration, the court held that the motion to stay trial was moot.

3. Under authority granted by various CEA provisions, the CFTC has promulgated detailed regulations concerning the use of arbitration to resolve disputes arising out of commodity futures trading. 17 C.F.R. §§ 180.1–180.5. Under 17 C.F.R. § 180.3(b), enforcement of agreements to arbitrate these disputes is permitted only when certain conditions are met. These include: (1) that signing the agreement not be made a condition of access to the market; (2) that the customer sign separately the clause providing for arbitration; and (3) that there be a warning in bold-face type that the customer is giving up certain rights to assert his claim in court.

*any* transaction on or subject to the rules of a contract market." 17 C.F.R. § 180.1 (1985) (emphasis added). The unqualified language of section 180.1 leaves no doubt that the CFTC intended non-CEA claims as well as CEA claims to be subject to the requirements of section 180.3.

The regulatory history also supports our conclusion. In its discussion of its proposed regulations, the CFTC stated that, under its proposed rules, it anticipated arbitration of "claims or grievances that do not involve violations of the [CEA] or rules thereunder." 41 Fed.Reg. 27,527 (July 2, 1976); *see also id.* n. 5 (giving violation of an exchange rule, not promulgated under CEA, as an example of a claim that could be submitted to arbitration).

The central purpose of section 180.3 is "to assure the efficacy of arbitration ... as well as to meet the requirements of [7 U.S.C. § 7a(11)], which require that such procedures be available and voluntary." 41 Fed.Reg. 27,526–27 (July 2, 1976). The CFTC wanted to encourage arbitration, but its regulations reflect its concern over the adhesive and overreaching nature of arbitration clauses that had been used by brokers and dealers trading in the contracts markets. *Id.* at 27,526; *see also* 41 Fed. Reg. 42,944–45 (Sept. 29, 1976) (discussing final rules). These concerns apply equally to CEA claims and non-CEA claims. We conclude that the requirements of section 180.3 apply to regulate agreements to arbitrate all disputes arising out of commodity trading. Accordingly, the arbitration clause included in Felkner's Customer Agreement is invalid as it applies to claims under RICO or any other state or federal statute or regulation.[4]

■ Defendants next argue that the CFTC lacks the power to regulate agreements to arbitrate claims that do not arise under the CEA. Again, we disagree.

Section 180.3 was promulgated pursuant to 7 U.S.C. §§ 7a(11), 12a(5), among other authority. The Supreme Court has recently confirmed the CFTC's power under section 12a(5) to promulgate regulations concerning alternative resolution of disputes arising out of commodity trading. *See Commodity Futures Trading Comm'n v. Schor,* — U.S. —, — – —, 106 S.Ct. 3245, 3252–54, 92 L.Ed.2d 675 (1986); *see also Ames v. Merrill Lynch, Pierce, Fenner & Smith,* 567 F.2d 1174, 1177–78 (2d Cir.1977) (CFTC may regulate the arbitration of all disputes relating to commodities trading, not just those specifically mentioned in the Act). Congress empowered the CFTC "to make and promulgate such rules and regulations as, in the judgment of the Commission, are reasonably necessary to effectuate any of the provisions or to accomplish any of the purposes" of the CEA. 7 U.S.C. § 12a(5). As the *Schor* Court noted, this provision constitutes a "broad grant of power." *Schor,* — U.S. at —, 106 S.Ct. at 3253.

Beyond the general mandate of section 12a(5), Congress also enacted section 7a(11), which requires that each contract market

provide a fair and equitable procedure through arbitration or otherwise ... for the settlement of customers' claims and grievances ... *Provided,* That (i) the use of such procedures shall be voluntary....

The various disclosure and severability requirements that section 180.3(b) establishes for arbitration clauses are intended to ensure the voluntariness of customers' agreements to arbitrate any dispute.

The contention by defendants that Congress intended to ensure only the voluntariness of agreements to arbitrate claims brought under the CEA is inconsistent with the "fundamental purpose" of the CEA to "insure fair practice and honest dealing on the commodities exchanges...." S.Rep.

---

**4.** We categorically reject defendants' argument that Felkner's RICO claim does not arise out of a dispute regarding his account. It plainly does. But even were we to accept defendants' contention, arbitration would still not be mandated because, under the express terms of the arbitration clause relied upon by defendants, arbitration is only required for disputes "arising out of or relating to" Felkner's Dean Witter account.

No. 93–1131, 93d Cong., 2d Sess. 1, *reprinted in* 1974 U.S.Code Cong. & Admin. News 5843, 5856. To enforce an adhesive arbitration agreement against non-CEA claims offends fairness and honesty as much as enforcing such an agreement against claims brought under the CEA itself. Furthermore, the fact that the CFTC intended section 180.3 to reach agreements to arbitrate non-CEA claims, creates a strong presumption that the CFTC did not exceed its authority in promulgating section 180.3. "[A]s the CFTC's contemporaneous interpretation of the statute it is entrusted to administer, considerable weight must be accorded the CFTC's position." *Schor,* — U.S. at ——, 106 S.Ct. at 3254; *accord State of Hawaii v. Heckler,* 760 F.2d 1031, 1033 (9th Cir.1985) (courts give "substantial deference" to agency interpretations of statutes that they are charged with administering and enforcing).

Defendants argue that their narrow interpretation of CFTC power is mandated by the strong federal policy favoring arbitration under the Arbitration Act, 9 U.S.C. §§ 1–14 (1982). *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* — U.S. ——, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985). But nothing in the Arbitration Act requires a person to submit a claim to arbitration unless he has so agreed. *See Francesco's B., Inc. v. Hotel & Restaurant Employees & Bartenders Union, Local 28,* 659 F.2d 1383, 1387 (9th Cir.1981).

Moreover, any presumption favoring arbitration may be rebutted by the express or implicit command of a federal statute. *Mitsubishi Motors,* 105 S.Ct. at 3355. In this case, 7 U.S.C. § 7a(11) clearly expresses Congress's intent to insure the voluntariness of arbitration agreements in contracts governing commodity-brokerage accounts. Defendants do not challenge the CFTC's authority to regulate the formation of agreements to arbitrate pure CEA

claims. They point to no reason why the presumption favoring arbitrability should not also be overcome when the CFTC acts to insure that customers bringing non-CEA claims or grievances that arise out of a commodity transaction are not unfairly deprived of access to a federal court.

## CONCLUSION

Because the arbitration clause here failed to meet the requirements of 17 C.F.R. § 180.3(b), there was no valid agreement to arbitrate Felkner's claims under RICO or any other provision of law.[5] Accordingly, the judgment denying defendants' motion to compel arbitration is AFFIRMED.

---

5. Because of our determination that no valid arbitration agreement between the parties existed, we need not decide whether claims under RICO are arbitrable. We also need not reach Felkner's contention that we lack jurisdiction to decide the RICO arbitrability issue. There is no challenge, nor could there be, to our jurisdiction to review the district court's ruling that the arbitration clause was void under 17 C.F.R. § 180.3(b).