Howard S. GANS, d/b/a Mary Ward Farms and PSG, Inc., Appellees,

v.

MERRILL LYNCH FUTURES, INC.; Merrill Lynch Commodities, Inc.; and Merrill Lynch, Pierce, Fenner & Smith, Inc., Appellants.

No. 85–2305 EA.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1986.

Decided March 11, 1987.

---

Phil Campbell, North Little Rock, Ark., for appellants.

Fletcher C. Lewis, Little Rock, Ark., for appellees.

Before JOHN R. GIBSON, Circuit Judge, FAIRCHILD, Senior Circuit Judge,* and MAGILL, Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

This matter is before this court on appeal from an order of the district court[1] denying in part a motion to stay further district court proceedings pending arbitration of the dispute between the parties. The district court granted the motion as to the plaintiffs' "arbitrable pendent state law claims," but denied it as to "nonarbitrable federal claims."[2]

I. FACTS

Plaintiff-appellee Howard S. Gans entered into a Commodity Account Agreement on July 27, 1979, with defendant-appellant Merrill Lynch, Pierce, Fenner & Smith.[3] Gans is associated with plaintiff PSG, which handled the hedging and marketing of Gans' 1983 rice crop.

---

* The HONORABLE THOMAS E. FAIRCHILD, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

2. The parties and the district court appear to agree in identifying separate state-law and federal claims, although none is separately stated in the complaint: paragraph 8 avers that Merrill Lynch was negligent, acted in bad faith, and did not exercise prudent business judgment, and violated the Commodity Exchange Act, regulations of the Commodity Futures Trading Commission, and rules of the New Orleans Commodity Exchange.

3. The Agreement provided in part that:

   \*   \*   \*   \*   \*   \*

6. ANY CLAIM, GRIEVANCE OR CONTROVERSY BETWEEN US ARISING OUT OF YOUR [the customer's] BUSINESS OR THIS AGREEMENT SHALL BE SETTLED BY ARBITRATION BEFORE THE NEW YORK STOCK EXCHANGE OR THE CONTRACT MARKET UPON WHICH THE TRANSACTION GIVING RISE TO THE CLAIM, GRIEVANCE, OR CONTROVERSY WAS EXECUTED OR INTENDED TO BE EXECUTED. YOU SHALL HAVE THE RIGHT OF ELECTION AS TO WHICH OF THE FOREGOING TRIBUNALS SHALL CONDUCT THE ARBITRATION.

   \*   \*   \*   \*   \*   \*

On April 2, 1984, plaintiffs brought this class action (never, however, certified). Jurisdiction was averred under the Commodity Exchange Act, 7 U.S.C. § 25(c) ("CEA") and 28 U.S.C. § 1332.[4] They allege that on June 13, 1983, Merrill Lynch wrongfully raised the margin requirements on open rough rice futures trading contracts held by its customers and cleared through the New Orleans Commodity Exchange ("NOCX"), and wrongfully accepted trades only for liquidation, thereby disrupting and manipulating the rice futures market, destroying the NOCX; and forcing customers to liquidate their open positions. Plaintiffs seek compensatory and punitive damages.

On July 12, 1984, Merrill Lynch petitioned the court pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, for a stay and an order compelling arbitration of plaintiffs' claims, plaintiffs having refused to abide by the arbitration provision. The district court granted the motion as to the pendent state law claims, but denied it as to the "nonarbitrable federal claims." Defendants appealed; plaintiffs do not contest the order to arbitrate their state law claims, albeit separation of those claims might well be difficult.

## II. APPEALABILITY OF DISTRICT COURT'S ORDER

The first question is whether this court has jurisdiction over this interlocutory appeal. Under the *Enelow-Ettleson* doctrine, *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935), and *Ettleson v. Metropolitan Life Ins. Co.*, 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942), the grant or denial of a stay of the district court's proceedings is appealable under 28 U.S.C. § 1292(a)(1) as a preliminary injunction, if the original action is a suit at law and the stay is sought to interpose an equitable defense. *Webb v. Rowland & Co., Inc.*, 800 F.2d 803, 805 (8th Cir.1986); *Mellon Bank, N.A. v. Pritchard-Keang Nam Corp.*, 651 F.2d 1244,

1247 (8th Cir.1981). While the rule has been much criticized, *Webb*, 800 F.2d at 806; *see, e.g., Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731 (7th Cir.1986), it remains an established principle of federal appellate jurisdiction. *Mellon*, 651 F.2d at 1247.

■ Both requirements are satisfied here. A suit for damages is an action at law, and the interposition of an arbitration agreement is an equitable defense. *Id.* at 1247–48. We therefore have jurisdiction to hear defendants' appeal. *Surman v. Merrill Lynch, Pierce, Fenner & Smith*, 733 F.2d 59, 61 (8th Cir.1984) ("Denial of the motion to compel arbitration is appealable ... as an interlocutory decision refusing an injunction in an action requesting legal relief.").

## III. ARBITRABILITY OF CEA CLAIMS

The first task for a court asked to compel arbitration is to determine whether the parties agreed to arbitrate that dispute. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). If so, the next step is to consider whether some external legal constraint forecloses arbitration of those claims. *Id.*, 105 S.Ct. at 3355.

Plaintiffs do not argue, and therefore have waived, the position that their claim is not arbitrable under the terms of the Agreement. Instead, they contend that either the CEA, or the CFTC regulations, render the Agreement invalid and therefore unenforceable.

All the circuits that have addressed the question have held that nothing in the CEA or its legislative history forbids the arbitration of claims arising under the CEA where provided by contract.

The argument that such claims are nonarbitrable derives by extension from *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), which held that broker-

---

**4.** While plaintiffs claimed diversity jurisdiction, there was no allegation of the domicile of PSG, Inc., the corporate plaintiff. Plaintiffs averred only $6,420 compensatory damages, although claiming $3,000,000 punitive damages for the entire class. Because the district court was satisfied to exercise pendent jurisdiction over the state-law claims, any deficiency in alleging diversity jurisdiction need not concern us.

customer agreements to arbitrate future claims arising under the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, are invalid. Section 14 of the 1933 Act specifically voids any "stipulation" waiving compliance with any provision of the Act; an arbitration agreement was held to be such a stipulation, and the right to select the judicial forum, *see* 15 U.S.C. § 77v(a), was held to be a provision that cannot be waived. 346 U.S. at 434 and 435. Section 14 mandates this result because it evidences Congress' desire "to assure that sellers could not maneuver buyers into positions that might weaken their ability to recover under the Securities Act." *Id.* at 432, 74 S.Ct. at 185.

■ No similar language, as to either the waiver of statutory provisions or the selection of the forum, appears in the CEA, nor does its legislative history suggest that Congress intended to prohibit arbitration. Indeed, the Act expresses a policy in favor of non-judicial dispute resolution, *see* 7 U.S.C. § 18, by providing for reparations proceedings before the CFTC (referred to as § 14 in CFTC Regulations, from Pub.L. No. 93–463, § 14, 88 Stat. 1389, (1974)). Congress also implied approval of arbitration in §§ 25(a)(2), 7a(11) and 21(b)(10). The Commission has sanctioned arbitration and promulgated regulations to assure that arbitration agreements are fair and to protect customers from making an uninformed decision to agree to arbitration. *See* 17 C.F.R. § 180.3. Thus, "[w]e are unable to

find a congressional signal that arbitration ought not be available in Commodity Exchange Act cases where the parties have previously entered into a valid arbitration agreement." *Smoky Greenshaw Cotton v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 720 F.2d 1446, 1449 (5th Cir.1983); *accord, Olson v. Paine Webber,* 806 F.2d at 744 (affirms enforcement of arbitration under CEA); *Marchese v. Shearson Hayden Stone, Inc.,* 734 F.2d 414, 420–21, 423, (9th Cir.1984); *Ingbar v. Drexel Burnham Lambert Inc.,* 683 F.2d 603, 605–06 (1st Cir.1983) (CFTC regulations meet the practical concerns as to relative bargaining power and broker overreaching underlying *Wilko* ); *Salcer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 682 F.2d 459, 460 (3rd Cir.1982); *Tamari v. Bache & Co. (Lebanon) S.A.L.,* 565 F.2d 1194, 1200 (7th Cir.1977).

## IV. APPLICABILITY OF CFTC REGULATIONS

Plaintiffs also contend that the arbitration provision is unenforceable because the Agreement does not contain verbiage required by 17 C.F.R. 180.3(b)(6) since August 15, 1983. The district court rejected this argument, holding that the adoption of the 1983 amendment was not meant to invalidate an agreement signed in 1979 and complying with the regulations in force before the amendments.[5]

---

**5.** We have set out at I, the bold face material required by the 1983 amendments, and at II, the corresponding bold face material included in the agreement between plaintiff and defendant.

I.

THREE FORUMS EXIST FOR THE RESOLUTION OF COMMODITY DISPUTES: CIVIL COURT LITIGATION, REPARATIONS AT THE COMMODITY FUTURES TRADING COMMISSION (CFTC) AND ARBITRATION CONDUCTED BY A SELF–REGULATORY OR OTHER PRIVATE ORGANIZATION.

THE CFTC RECOGNIZES THAT THE OPPORTUNITY TO SETTLE DISPUTES BY ARBITRATION MAY IN SOME CASES PROVIDE MANY BENEFITS TO CUSTOMERS, INCLUDING THE ABILITY TO OBTAIN AN EXPEDITIOUS AND FINAL RESOLUTION OF DISPUTES WITHOUT INCURRING SUBSTANTIAL COSTS. THE CFTC REQUIRES, HOWEVER, THAT EACH CUSTOMER INDIVIDUALLY EXAMINE THE RELATIVE MER-

ITS OF ARBITRATION AND THAT YOUR CONSENT TO THIS ARBITRATION AGREEMENT BE VOLUNTARY.

BY SIGNING THIS AGREEMENT YOU: (1) MAY BE WAIVING YOUR RIGHT TO SUE IN A COURT OF LAW; AND (2) ARE AGREEING TO BE BOUND BY ARBITRATION OF ANY CLAIMS OR COUNTERCLAIMS WHICH YOU OR [NAME] MAY SUBMIT TO ARBITRATION UNDER THIS AGREEMENT. YOU ARE NOT, HOWEVER, WAIVING YOUR RIGHT TO ELECT INSTEAD TO PETITION THE CFTC TO INSTITUTE REPARATIONS PROCEEDINGS UNDER SECTION 14 OF THE COMMODITY EXCHANGE ACT WITH RESPECT TO ANY DISPUTE WHICH MAY BE ARBITRATED PURSUANT TO THIS AGREEMENT. IN THE EVENT A DISPUTE ARISES, YOU WILL BE NOTIFIED IF [NAME] INTENDS TO SUBMIT THE DISPUTE TO ARBITRATION. IF YOU BELIEVE A VIOLATION OF THE COMMODITY EX-

Plaintiffs renew the argument, and they are free to do so in support of affirmance. *Jones v. United States,* 536 F.2d 269, 271 n. 4 (8th Cir.1976).

In 1976, the CFTC adopted § 180.3 which requires that pre-dispute arbitration agreements must contain specified language to assure the customer's informed consent. 41 Fed.Reg. 42,943 (Sept. 29, 1976). In promulgating the rules, the Commission noted that many brokerage houses refused to deal with customers who refused to sign arbitration agreements; it described the agreements then in use as "adhesion contracts," and stated its belief that prexisting contracts would be held to be unenforceable. *Id.* at 42,944. The Commission commented that the new regulations therefore required that "all pre-dispute arbitration agreements that do not satisfy the conditions set forth in the proposed rule will be null and void, including those heretofore signed by customers." *Id.*

Several courts have therefore held that noncomplying agreements signed prior to the adoption of the 1976 regulations are not now enforceable. *Curran v. Merrill Lynch, Pierce, Fenner and Smith, Inc.,* 622 F.2d 216, 225–29 (6th Cir.), *aff'd on other grounds,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1980); *Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 567 F.2d 1174, 1178–79 (2d Cir.1977); *but cf. Arkoosh v. Dean Witter & Co., Inc.,* 571 F.2d 437, 438–39 (8th Cir.1978) (judgment enforcing arbitration award affirmed, where plaintiff's assertion of rights under 1976 regulation was untimely and to vacate award would work substantial injustice on defendant).

In revising in 1983 the bold face language to be required in an arbitration clause, the CFTC sought to "improve customer understanding of the arbitration agreement and its voluntary nature." 48 Fed.Reg. 22,140 (May 17, 1983). (There was no suggestion as there had been in 1976 that pre-existing agreements (in compliance with the 1976 requirements) were unenforceable adhesion contracts or that customers were being denied services for failing to agree to arbitration.) Although it failed to so state in its commentary or in the text of the amendment, the Commission seems to have intended that noncomplying agreements to arbitrate would no longer be enforceable as of the amendment's effective date, so that after August 15, 1983, a party seeking to compel arbitration may do so only pursuant to an agreement containing the new language. *See Wotkyns v. D.E. Jones Commodities, Inc.,* 791 F.2d 749, 751 (9th Cir.1986) (finding a compelling implication that the 1983 amendment, though it did not say so, applied to existing contracts just as the 1976 regulation had); *cf. Olson v. Paine Webber,* 806 F.2d at 743 (assuming *in dictum* that the 1983 amendment had the same effect on existing agreements as the 1976 amendment). The CFTC approved procedures suggested by the Futures Industry Association ("FIA"), by which dealers could arrange for substitution of existing agreements for agree-

---

CHANGE ACT IS INVOLVED AND IF YOU PREFER TO REQUEST A SECTION 14 "REPARATIONS" PROCEEDING BEFORE THE CFTC, YOU WILL HAVE 45 DAYS FROM THE DATE OF SUCH NOTICE IN WHICH TO MAKE THAT ELECTION.
YOU NEED NOT SIGN THIS AGREEMENT TO OPEN AN ACCOUNT WITH [NAME].
  II.
7. WHILE THE COMMODITY FUTURES TRADING COMMISSION (CFTC) RECOGNIZES THE BENEFITS OF SETTLING DISPUTES BY ARBITRATION, IT REQUIRES THAT YOUR CONSENT TO SUCH AN AGREEMENT BE VOLUNTARY. YOU NEED NOT SIGN THIS AGREEMENT CONTAINING THE ARBITRATION CLAUSE IN PARAGRAPH 6 TO OPEN AN ACCOUNT WITH MERRILL LYNCH. * * *

8. BY SIGNING THIS AGREEMENT, YOU MAY BE WAIVING YOUR RIGHT TO SUE IN A COURT OF LAW. BUT YOU ARE NOT WAIVING YOUR RIGHT TO ELECT LATER TO PROCEED PURSUANT TO SECTION 14 OF THE COMMODITY EXCHANGE ACT TO SEEK DAMAGES SUSTAINED AS A RESULT OF A VIOLATION OF THE ACT. IN THE EVENT A DISPUTE ARISES YOU WILL BE NOTIFIED IF MERRILL LYNCH INTENDS TO SUBMIT THE DISPUTE TO ARBITRATION. IF YOU BELIEVE A VIOLATION OF THE COMMODITY EXCHANGE ACT IS INVOLVED AND YOU PREFER TO REQUEST A SECTION 14 "REPARATIONS" PROCEEDING BEFORE THE CFTC YOU WILL STILL HAVE 45 DAYS IN WHICH TO MAKE THAT ELECTION.

ments in compliance with the 1983 amendment. 48 Fed.Reg. 41153 (September 14, 1983). *See also* Comm.Fut.L.Rep. (CCH) ¶ 21,818 (July 23, 1983) (letter from Commission to FIA concurring in FIA procedures; notwithstanding whatever procedures were adopted, FIA members required on August 15, 1983 to comply with amended Rule 180.3).

■ Hence appellant Merrill Lynch was required to amend its outstanding agreement with plaintiffs in order to seek arbitration after August 15, 1983. We are told in the *Merrill Lynch* reply brief now before us that it carried out an amending procedure under which it sent plaintiffs a notice of the changes newly required by the 1983 amendment and gave plaintiffs the option of being bound by a new agreement containing the conforming language, unless they elected in writing not to be bound at all. It is asserted that plaintiffs did not so elect. We are not aware of any reason the district court did not consider this sequence of events, but assuming they happened as represented, plaintiffs' claim of a noncomplying agreement would be wholly met. On remand, the district court should determine whether substitution of an agreement in compliance with the amended regulation was accomplished. If it was, arbitration should be ordered.

Insofar as the order appealed from denied defendant's motion to stay proceedings and compel arbitration based on the issue of the arbitrability of CEA claims, it is vacated and the case remanded for proceedings consistent with this opinion.