928 F.2d 159
 59 USLW 2630
 Gloria A. STOREY, Individually and as Executrix of the
Estate of William D. Storey, Deceased, Plaintiff-Appellee,
v.
SHEARSON-AMERICAN EXPRESS and Jon Grady Deaton, Jointly and
Severally, Defendants-Appellants.
 No. 90-2285.
 United States Court of Appeals,
Fifth Circuit.
 April 5, 1991.
 
 Will S. Montgomery, Jenkins & Gilchrist, P.C., Dallas, Tex., Jeffrey L. Friedman, Theodore A. Krebsbach, New York City, for defendants-appellants.
 Denis A. Downey, Downey & Sullivan, Brownsville, Tex., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before REAVLEY, JONES and SMITH, Circuit Judges.
 REAVLEY, Circuit Judge:
 
 
 1
 The district court refused to enforce an agreement to arbitrate a dispute over alleged commodities trading fraud on the ground that the agreement failed to conform to Commodities Futures Trading Commission regulations which the court applied retroactively. We disagree.
 
 BACKGROUND
 
 2
 Gloria Storey, individually and as executrix of her husband William's estate, sued Shearson/American Express Inc. (Shearson) and Jon Deaton, Shearson's broker who handled the Storeys' account, for commodities trading fraud. William Storey had discovered illicit account activity that caused significant losses, confronted Deaton, and demanded restitution. Deaton allegedly agreed to repay the losses, but never did. In February 1983, the Storeys could not meet margin calls on several trades and suffered severe financial losses. William Storey died in April 1983. In the same month, Shearson requested payment of an $11,128 account deficit. When the Storeys failed to pay, Shearson attempted to submit the matter to arbitration, as provided in contracts with the Storeys.[1]
 
 
 3
 Gloria Storey filed the present action, alleging (1) fraudulent misrepresentations that violated the Commodity Exchange Act and rules promulgated thereunder; (2) civil RICO violations; (3) Texas Deceptive Trade Practices Act violations; (4) common law fraud; (5) breach of contract; and (6) breach of fiduciary duty. Shearson again sought submission of the controversy to arbitration.
 
 
 4
 The district court declined to enforce the arbitration clauses. Rules promulgated by the Commodities Futures Trading Commission (CFTC) require certain procedures to ensure the voluntariness of arbitration agreements. 17 C.F.R. Sec. 180.3 (1990). The CFTC amended these rules in 1983, requiring certain language to be included in the arbitration provisions of a commodities trading contract.[2] The Storey contract, executed prior to the effective date of the 1983 amendments, complied with the old regulations, but not with the amendments. The district court applied the amendments retroactively, noting that the litigation did not commence until after the effective date of the amendments, and that Shearson had apparently not informed the Storeys of their rights under the 1983 provisions. Shearson appeals.
 
 
 5
 Storey offers several bases for refusing to enforce the arbitration clauses: (1) failure to comply with the 1983 CFTC amendments; (2) failure to comply with the 1976 CFTC regulations; (3) equitable estoppel; (4) waiver of Shearson's right to arbitrate; (5) the nonexclusiveness of arbitration under the contract; and (6) failure to comply with Texas General Arbitration Act. The district court based its decision solely on the retroactivity of the 1983 CFTC amendments. We reverse the district court's judgment, and we reject all of Storey's arguments for nullifying the arbitration clauses.
 
 DISCUSSION
 
 6
 1. Retroactive Application of the 1983 Amendments.
 
 
 7
 The district court followed Eighth and Ninth Circuit precedent in applying the 1983 amendments retroactively. See Gans v. Merrill Lynch Futures, Inc., 814 F.2d 493 (8th Cir.1987) (remanding for determination whether broker notified plaintiffs of 1983 changes and thereby substituted conforming agreement); Wotkyns v. D.E. Jones Commodities, Inc., 791 F.2d 749 (9th Cir.1986) (per curiam) (reversing district court's grant of stay pending arbitration because 1983 amendments applied retroactively). The arbitration agreements in both Wotkyns and Gans had been signed before the 1983 amendments, but the circuit courts held that the amendments applied retroactively, based primarily on an analogy to the 1976 regulations, which the CFTC expressly intended to nullify pre-existing, nonconforming agreements. One court, however, has upheld an arbitration agreement executed after the 1983 amendments but satisfying only the 1976 regulation. Olson v. Paine, Webber, Jackson & Curtis, Inc., 806 F.2d 731, 743-44 (7th Cir.1986) (enforcing arbitration and holding that failure of the broker to comply with the 1983 amendments could not possibly have hurt the customer).
 
 
 8
 We find the argument for retroactivity unpersuasive for several reasons. First, "retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988); see also Walker v. United States Dep't of Housing and Urban Development, 912 F.2d 819, 831-32 (5th Cir.1990) (rejecting argument for retroactivity of Anti-Demolition Statute); United Brotherhood of Carpenters and Joiners v. Mar-Len of Louisiana, Inc., 906 F.2d 200, 203-04 (5th Cir.1990) (rejecting argument for retroactivity of NLRB decision).
 
 
 9
 Second, the express basis for the retroactivity of the 1976 regulation does not support the retroactivity of the 1983 amendments. The 1976 enactment of section 180.3 intended to ensure the voluntariness of arbitration agreements by requiring that such agreements be separately signed and contain disclosures in large boldface type regarding the meaning and effect of the agreement. See Felkner v. Dean Witter Reynolds, Inc., 800 F.2d 1466, 1469 (9th Cir.1986). The CFTC expressly required retroactivity because "customers who had entered into agreements before adoption of the regulation needed and were entitled to the protection of the rule no less than those who signed agreements after November 29, 1976." Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 567 F.2d 1174, 1179 (2d Cir.1977) (citation omitted). The Storeys' Commodity Customer Agreement did comply with the 1976 regulation.
 
 
 10
 The purpose of the 1983 amendments, by contrast, was to "encourage the use of arbitration as a means of dispute resolution by participants in the commodity futures and options markets." 48 Fed.Reg. 22,136 (May 17, 1983), cited in Merrill Lynch Commodities, Inc. v. Richal Shipping Corp., 581 F.Supp. 933, 939 (S.D.N.Y.1984) (declining to give 1983 amendments retroactive effect); see also Olson, 806 F.2d at 743 (finding it "impossible to understand" how the plaintiff was hurt by defendant's failure to advise her in the agreement that she could elect a qualified arbitration forum and that defendant would pay any incremental fees assessed by the arbitrators).[3] We likewise decline to hold that the Storeys needed retroactive application of supplemental provisions designed to encourage arbitration.[4]
 
 
 11
 Third, the fact that the CFTC expressly provided for the retroactivity of the 1976 regulation, but failed to express the same intent as to the 1983 amendments, suggests the opposite of the district court's conclusion: the CFTC perceived no basis for retroactivity, and neither should courts imply such a basis given judicial reluctance to apply rules retroactively without a clear directive to do so.
 
 
 12
 Fourth, in this case, unlike Wotkyns and Gans, the unauthorized trading dispute had already arisen, and Shearson had notified the Storeys of its intent to arbitrate the account deficit dispute prior to the effective date of the amendments. Disputes, as opposed to agreements, that precede the effective date of the amendments ought not trigger retroactivity, which was in fact the CFTC position even as to the retroactive 1976 regulation. See Ames, 567 F.2d at 1181 (Meskill, J., dissenting) (CFTC as amicus curiae noted that "its intent to reach pre-existing agreements did not extend to cases where a dispute had already arisen at the time the regulation was adopted").
 
 
 13
 Fifth, to the extent that the foregoing creates any doubt about the arbitrability of the claims in this case, the Supreme Court has indicated the proper result. "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). We therefore reject the retroactive application of the 1983 Amendments and reverse the district court's judgment.
 
 
 14
 2. Violation of 1976 Regulation.
 
 
 15
 Storey admits that the arbitration agreement in the first contract executed by the parties complies with the 1976 regulation, but argues that the second contract does not.[5] The second agreement apparently applies to securities, and revokes prior agreements "for the purchase and sale of securities and put and call options made with Shearson," but does not revoke prior agreements concerning commodities trading. While the arbitration agreement in the second contract does not comply in all respects with the 1976 regulation, neither does it nullify the Commodity Customer Agreement, which directly concerns this commodity account dispute and does comply with the 1976 regulation.
 
 
 16
 3. Equitable Estoppel.
 
 
 17
 Storey argues that Deaton admitted fraud and promised to borrow money to repay the loss, and that William Storey, relying on that representation, invoked neither arbitration nor judicial remedies. William Storey later wrote Deaton's supervisor, Richard Settle, who told Storey that the problem would be resolved.
 
 
 18
 Storey's legal argument is unclear and bereft of authority for the application of estoppel to this case. Shearson might be estopped to deny that it promised to resolve the problem, but not estopped to seek arbitration, which is, after all, precisely an attempt to resolve the problem.
 
 
 19
 4. Waiver of the Right to Arbitrate.
 
 
 20
 Storey argues that a duty to arbitrate the controversy arose at the inception of the controversy, and that Shearson failed to demand arbitration in a timely manner, thus waiving the contractual right to arbitration. The argument is meritless. Shearson had no duty to initiate arbitration proceedings at the inception of the controversy. Shearson complied with the agreement by timely seeking arbitration of the account deficit dispute, and again invoking its arbitration rights when Storey first sought a judicial remedy for the unauthorized trading dispute.
 
 
 21
 Moreover, Fifth Circuit precedent places a "heavy burden" on a party claiming waiver of arbitration rights. See Frye v. Paine, Webber, Jackson & Curtis, Inc., 877 F.2d 396, 398 (5th Cir.1989) (waiver requires that party "substantially invoke[ ] the judicial process to the detriment or prejudice of the other party"), cert. denied, --- U.S. ----, 110 S.Ct. 1318, 108 L.Ed.2d 493 (1990). Here, neither discovery nor motion practice occurred before Shearson invoked its arbitration right.
 
 
 22
 5. Nonexclusiveness of Arbitration Remedy.
 
 
 23
 Storey argues that the contract provides alternative remedies, and that arbitration is not the exclusive avenue for resolving controversies. Storey cites to a contract provision that covers service of process, jurisdiction, and cost issues in the event of legal action. This contingency clause does not reduce the broad scope of the arbitration clause, which mandates arbitration of "any controversy arising out of or relating to [the] account."
 
 
 24
 6. Noncompliance with Texas Arbitration Act.
 
 
 25
 Storey cites repealed Texas law requiring a party's attorney to sign any arbitration agreement for such agreement to be enforceable. Texas General Arbitration Act, ch. 689, Sec. 1, 1965 Tex.Gen.Laws 1593, amended by ch. 704, Sec. 1, 1979 Tex.Gen.Laws 1708. Even if the Federal Arbitration Act does not preempt such requirements, the amended Texas statute requires an attorney's signature only for classes of arbitration contracts unrelated to the subject of this dispute. TEX.REV.CIV.STAT.ANN. art. 224(b) (Vernon's Supp.1991).
 
 
 26
 REVERSED and REMANDED.
 
 
 
 [1]
 On April 28, 1982, the parties executed a "Commodity Customer Agreement." The Storeys signed the following Arbitration Agreement attached to the end of the Commodity Agreement:
 Any controversy arising out of or relating to my account, to transactions with you and/or your agents for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of the Board of Directors of the New York Stock Exchange, Inc. or of the American Arbitration Association Inc., as I may elect. If I do not make such election by registered mail addressed to you at your main office within five days after demand by you that I make such election, then you may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.
 While the Commodity Futures Trading Commission (CFTC) recognizes the benefits of settling disputes by arbitration, it requires that your consent to such an agreement be voluntary. You need not sign this Arbitration Agreement to open an account with Shearson (See 17 C.F.R. 180.1-180.6).
 By signing this Arbitration Agreement, you may be waiving your right to sue in a court of law, but you are not waiving your right to elect at a later date to proceed pursuant to Section 14 of the Commodity Exchange Act to seek damages sustained as a result of a violation of the Act. In the event a dispute arises you will be notified if Shearson intends to submit the dispute to arbitration. If you believe a violation of the Commodity Exchange Act is involved and you prefer to request a Section 14 "Reparations" Proceeding before the CFTC, you will still have 45 days in which to make that decision.
 (Boldface in original.) On May 5, 1982, the parties executed a second contract, entitled "Customers Agreement," which purports to cover securities trading and contains the following arbitration clause:
 Unless unenforceable due to federal or state law, any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof shall be settled by arbitration in accordance with the rules then in effect of the National Association of Securities Dealers, Inc. or the Boards of Directors of the New York Stock Exchange, Inc. and/or the American Stock Exchange, Inc., as I may elect.
 
 
 [2]
 17 C.F.R. Sec. 180.3(b)(6), as amended in 1983, provides:
 The agreement must include the following language printed in large boldface type:
 THREE FORUMS EXIST FOR THE RESOLUTION OF COMMODITY DISPUTES: CIVIL COURT LITIGATION, REPARATIONS AT THE COMMODITY FUTURES TRADING COMMISSION (CFTC) AND ARBITRATION CONDUCTED BY A SELF-REGULATORY OR OTHER PRIVATE ORGANIZATION.
 THE CFTC RECOGNIZES THAT THE OPPORTUNITY TO SETTLE DISPUTES BY ARBITRATION MAY IN SOME CASES PROVIDE MANY BENEFITS TO CUSTOMERS, INCLUDING THE ABILITY TO OBTAIN AN EXPEDITIOUS AND FINAL RESOLUTION OF DISPUTES WITHOUT INCURRING SUBSTANTIAL COSTS. THE CFTC REQUIRES, HOWEVER, THAT EACH CUSTOMER INDIVIDUALLY EXAMINE THE RELATIVE MERITS OF ARBITRATION AND THAT YOUR CONSENT TO THIS ARBITRATION AGREEMENT BE VOLUNTARY.
 BY SIGNING THIS AGREEMENT, YOU: (1) MAY BE WAIVING YOUR RIGHT TO SUE IN A COURT OF LAW; AND (2) ARE AGREEING TO BE BOUND BY ARBITRATION OF ANY CLAIMS OR COUNTERCLAIMS WHICH YOU OR [NAME] MAY SUBMIT TO ARBITRATION UNDER THIS AGREEMENT. YOU ARE NOT, HOWEVER, WAIVING YOUR RIGHT TO ELECT INSTEAD TO PETITION THE CFTC TO INSTITUTE REPARATIONS PROCEEDINGS UNDER SECTION 14 OF THE COMMODITY EXCHANGE ACT WITH RESPECT TO ANY DISPUTE WHICH MAY BE ARBITRATED PURSUANT TO THIS AGREEMENT. IN THE EVENT A DISPUTE ARISES, YOU WILL BE NOTIFIED IF [NAME] INTENDS TO SUBMIT THE DISPUTE TO ARBITRATION. IF YOU BELIEVE A VIOLATION OF THE COMMODITY EXCHANGE ACT IS INVOLVED AND IF YOU PREFER TO REQUEST A SECTION 14 "REPARATIONS" PROCEEDING BEFORE THE CFTC, YOU WILL HAVE 45 DAYS FROM THE DATE OF SUCH NOTICE IN WHICH TO MAKE THAT ELECTION.
 YOU NEED NOT SIGN THIS AGREEMENT TO OPEN AN ACCOUNT WITH [NAME]. SEE 17 CFR 180.1-180.5.
 Additionally, the 1983 Amendments require notification that a customer has the right to elect a qualified arbitration forum, 17 C.F.R. Sec. 180.3(b)(4) (1990), and that any incremental costs assessed by an arbitration forum will be paid by the brokerage firm, 17 C.F.R. Sec. 180.3(b)(5) (1990).
 
 
 [3]
 As in Olson, Shearson has agreed to be bound by these technical requirements of the 1983 amendments, thus curing any deficiency with respect to the amendments, and securing for Storey all procedural advantages that the amendments accord her
 
 
 [4]
 Storey argues that the required language, acknowledging the benefits of arbitration, should be taken as a warning that arbitration sometimes may not provide benefits. See supra, note 2. We disagree with this interpretation, but in any event Storey never argues that compliance with the 1983 Amendments would have discouraged her signing the arbitration agreement, or produced any different result. Indeed, her affidavit disavows any knowledge of the arbitration agreement that she and her husband separately signed. These circumstances illustrate the mischief of retroactivity, which would here nullify an otherwise valid contract based on technical language requirements that the complaining party apparently would never have read
 
 
 [5]
 See supra, note 1