**John E. WASHBURN, Director of Insurance for the State of Illinois, and Liquidator of Reserve Insurance Company, Plaintiff-Appellee,**

v.

**SOCIETE COMMERCIALE de REASSURANCE, Defendant-Appellant.**

No. 86–2592.

United States Court of Appeals, Seventh Circuit.

Argued April 17, 1987.

Decided Sept. 8, 1987.

Rehearing Denied Sept. 30, 1987.

Ronald A. Jacks, Isham, Lincoln & Beale, Chicago, Ill., for defendant-appellant.

Mary Patricia Burns, Burke & Smith Chartered, Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, and CUMMINGS, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

The Supreme Court recently held that actions brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"), can be subject to arbitration if an agreement so pro-

vides. See *Shearson/American Express, Inc. v. McMahon,* — U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). The issue in this appeal is whether the arbitration agreement that the parties entered into so provides. The district court held that the agreement did not, reasoning that the arbitration agreement between the plaintiff Reserve Insurance Company ("Reserve"), represented by its statutory liquidator the Director of Insurance of the State of Illinois ("Director"), and the defendant Societe Commerciale de Reassurance ("SCOR") was not broad enough to cover this lawsuit. The underlying lawsuit involves allegations regarding SCOR's role in a complex scheme to defraud Reserve, Reserve's policyholders, Reserve's shareholders and creditors by causing Reserve to operate while insolvent and to help drain Reserve of its most profitable business. We must decide this appeal pursuant to the jurisdiction conferred on us by 28 U.S.C. § 1292(a)(1). See *Olson v. Paine, Webber,* 806 F.2d 731 (7th Cir.1986); *Gans v. Merrill Lynch Futures, Inc.,* 814 F.2d 493 (8th Cir.1987); *Page v. Moseley, Hallgarten, Estabrook & Weeden,* 806 F.2d 291 (1st Cir.1986). Because we conclude that this suit is not covered by the provisions of the arbitration agreement, we affirm the judgment of the district court.

The somewhat complex facts of the underlying suit are detailed in our opinion in *Schacht v. Brown,* 711 F.2d 1343 (7th Cir. 1983), certiorari denied, 464 U.S. 1002, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983), where we concluded that the Director of Insurance of the State of Illinois had standing to bring this suit and had alleged facts sufficient to be redressed in a civil action under RICO. *Id.* at 1345. In late 1974 officers and directors of Reserve and American Reserve Corporation ("ARC"), its corporate parent, caused their companies to enter into an agreement with SCOR in a deal that was brokered by SCOR Reinsurance Company ("SCOR Re"). Under the agreement, Reserve ceded to SCOR most of its more profitable and least risky business which SCOR then secretly retroceded to Guarantee Reserve Co. ("GRC"), an unregulated Bermuda subsidiary of ARC. However, because GRC was insufficiently capitalized to cover the potential losses involved in the deal, ARC's officers secretly agreed to cover potential losses resulting from the retrocession. The Director alleges that these transactions allowed Reserve, although insolvent by the end of 1974, to transfer $3,000,000 to GRC which then transferred the money to ARC in the form of dividends and loans. ARC in turn made payments to SCOR of over $2,500,000. In addition, the Director alleges that as long as ARC remained solvent, SCOR assumed no actual liability for the insurance business ceded to it by Reserve. The Director also alleges that some of the agreements were entered into with the express purpose of avoiding scrutiny by state regulatory authorities. The complaint states that SCOR and SCOR Re were aware of the fraudulent purposes of the underlying agreements which they entered into and brokered. "In short, the Director claims that SCOR, SCOR Re and [various accounting firm defendants] joined with ARC and Reserve's officers and directors in a multifaceted, fraudulent scheme which kept Reserve operating long past insolvency in a manner which resulted in enormous losses" to Reserve. *Id.* at 1345–1346.

One facet of the multifaceted scheme involved the agreement between SCOR and Reserve. Their "agreement of reinsurance" contains an arbitration provision which provides that "[s]hould any difference of opinion arise between the Reinsurer and [Reserve] which cannot be resolved in the normal course of business with respect to the interpretation of this Agreement or the performance of the respective obligations of the parties under this Agreement, the difference shall be submitted to arbitration." There is no dispute in this case that the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* has established a federal policy favoring arbitration and that the courts are required to "rigorously enforce agreements to arbitrate." *Shearson/American Express v. McMahon,* 107 S.Ct. at 2337 (quoting *Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1243, 84 L.Ed.2d 158 (1985)). Moreover, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration" with

"any doubts concerning the scope of arbitrable issues … resolved in favor of arbitration…." *Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); see also *Schacht v. Beacon Insurance Co.*, 742 F.2d 386, 390 (7th Cir.1984). Citing these principles, SCOR makes several challenges to the district court's conclusion that the dispute in this litigation is not arbitrable because the arbitration clause in the contract concerns only " 'differences of opinion' between Reserve and SCOR over interpretation of the reinsurance agreement and over whether the parties satisfactorily performed their obligations under the agreement." First, it claims that this case actually does involve the interpretation of "terms" of the agreement because at issue here are "transcend[ent] disputes over the interpretation of the 'terms' of the reinsurance agreement." Appellant's Brief at 8. Second, SCOR argues that even if there is no dispute here about the "terms" of the agreement, there is a dispute with respect to the "interpretation of this agreement" because "the core issue in this case is whether the [reinsurance agreement] is to be interpreted as 'true reinsurance' or merely as a 'financing scheme.' " *Id.* Third, SCOR contends that the "performance of the respective obligations of the parties under this Agreement" is involved because "were it not for its performance of the [reinsurance agreement], SCOR would not be implicated in this lawsuit at all."

As the Director correctly points out, the primary problem with SCOR's arguments is its mischaracterization of the underlying lawsuit. The litigation does not involve a controversy arising under the agreement itself, but rather a conspiracy in which the conspirators used the reinsurance agreement, a retrocession agreement, a guaranty agreement and several other devices involving SCOR, SCOR Re, ARC, and GRC, to drive Reserve further into insolvency and defraud entities and individuals who had interests in the continued viability of Reserve. See *Schacht v. Brown*, 711 F.2d at 1345–1346. In fact, there is no evidence or allegation that either party did not perform its duties or obligations under the reinsurance agreement. Perhaps the dispute was best characterized by SCOR in its opening brief in the first appeal before this court: "The liquidator does not and cannot allege that there was anything illegal or improper about the reinsurance treaty between SCOR and [Reserve]. Rather, the liquidator appears to object to a second reinsurance transaction, a retrocession, to which neither Market nor Reserve was a party." In its reply brief, it again described the dispute as one in which "[t]he basic premise of the liquidator's case against SCOR and SCOR Re is that they entered into an undisclosed retrocession from SCOR to GRC which together with ARC's guarantee of GRC's performance operated to conceal Reserve's insolvency." In short, the central allegation of this litigation does not involve an issue "with respect to the interpretation of this Agreement or the performance of the respective obligations of the parties under this Agreement" as the arbitration agreement requires.

The specific arguments raised are essentially variations on the same mischaracterization theme. SCOR's transcendent dispute claim fails to identify any dispute "with respect to the interpretation of [the] agreement." The Director correctly points out that even if every word of the reinsurance agreement were interpreted, this case would be no closer to a resolution. For the same reason, we must reject SCOR's contention that issues of interpretation are "surely" involved because part of the dispute here is whether the reinsurance agreement between SCOR and Reserve is "true reinsurance" or a "financing scheme." In fact, interpreting the agreement itself would provide no assistance in resolving that issue. The dispute in this case does not simply involve whether the reinsurance agreement itself is "true reinsurance." Rather, the dispute here centers around whether the agreement played a role in a much wider fraudulent scheme that was not "true reinsurance." In short, the agreement itself may well have been "true reinsurance" but still have been part of a wider scheme that resulted in RICO violations. Similarly, SCOR's contention that the Director's lawsuit involves performance of obligations under the reinsurance agree-

ment suffers from the defect that the Director does not make any such allegation. All parties agree that SCOR did fulfill its duties to Reserve under the reinsurance agreement.

SCOR's reliance on *Schacht v. Beacon Insurance Co.*, 742 F.2d 386 (7th Cir.1984), is misplaced. The underlying dispute in *Beacon* involved a claim by Beacon Insurance Company that Kenilworth Insurance Company, represented in that litigation by its statutory liquidator, had not fulfilled a condition precedent to the contract which it claimed necessitated paying $1,080,000 as an advance premium. Beacon also claimed that Kenilworth had fraudulently induced it to enter into the contract by orally promising to pay the advance premium. *Id.* at 389. Beacon resisted Kenilworth's attempts to arbitrate the dispute, asserting that it was not covered by an arbitration provision that is identical to the one entered into by SCOR and Reserve. We affirmed the district court's decision ordering the parties to arbitrate. We noted that only when the claimed contractual invalidity goes to the arbitration clause itself does the court determine the existence of a contractual provision. *Id.* We rejected Beacon's fraud in the inducement argument because the claim of fraud applied "equally to all provisions of the contract." *Id.* at 390. Therefore, the dispute was arbitrable. We also rejected the condition precedent argument stating that "[a] defense to enforceability of contractual provisions, as opposed to the denial of the existence of any contractual relationship, does not deprive the arbitration clause of its effectiveness." *Id.* The claim of the failure to fulfill the condition precedent "involv[ed] questions of interpretation and performance" and the parties there as here had agreed to "submit such questions to resolution by arbitration." *Id.*

The difference between *Beacon* and this case is readily apparent. This case does not involve a claim of fraud in the inducement nor a claim that either party failed to fulfill its obligations under the contract or failed to fulfill a condition precedent. Despite SCOR's attempts to distort the nature of the underlying lawsuit, the RICO claim here simply does not "involve questions of interpretation and performance" as in *Beacon*. *Id.* at 391. In short, we reject SCOR's argument that "[t]he district court's ruling below is directly contrary to [*Beacon*]." Appellant's Brief at 15. The other cases upon which SCOR relies are also inapposite. See *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633 (5th Cir.1985); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 723 F.2d 155 (1st Cir.1983), *aff'd in part, rev'd in part*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

We have carefully considered the other arguments raised by SCOR and conclude that they do not require further comment. Even when we resolve "any doubts concerning the scope of arbitrable issues ... in favor of arbitration ...," *Moses H. Cone Hospital v. Mercury Construction Corp.*, 460 U.S. at 24–25, 103 S.Ct. at 941, it is clear that the dispute in this case is not subject to arbitration. Therefore, we affirm the decision of the district court.

AFFIRMED.