**HODGE BROTHERS, INC., a Wisconsin corporation, and Hodge Farms Partnership, a Wisconsin general partnership, Plaintiffs,**

v.

**The DeLONG CO., INC., a Wisconsin corporation, William DeLong, and David DeLong, Defendants.**

No. 96–C–543–C.

United States District Court, W.D. Wisconsin.

Sept. 24, 1996.

Christopher L. Gallinari, Bellows and Bellows, Chicago, IL, for Hodge Brothers, Inc. and Hodge Farms Partnership.

Timothy F. Nixon, Lafollette & Sinykin, Madison, WI, for DeLong Co., Inc. and William and David DeLong.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action in which plaintiffs seek declaratory relief, recision and money damages for violation of the Commodity Exchange Act, 7 U.S.C. §§ 1–25, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, and for common law fraud, breach of contract, breach of fiduciary duties and other wrongs. Jurisdiction is asserted under 28 U.S.C. §§ 1331 and 1367; 7 U.S.C. § 24 and 18 U.S.C. § 1964. Defendants have counterclaimed, seeking declaratory and injunctive relief and money damages. Defendants allege violations of the Warehouse Keepers and Grain Dealers Security Act, Wis.Stat. §§ 127.01–.18, breach of contract and fraudulent misrepresentation, among other things. The case turns on the interpretation and validity of various contracts entered into between the parties for the sale of grain and soybeans. It is presently before the court on defendants' motion to stay all proceedings in this court and compel arbitration pursuant to §§ 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1–16. Defendants contend that this action is subject to arbitration under the Federal Arbitration Act because the parties incorporated by reference into each of their grain purchase contracts a mandatory arbitration provision that encompasses the present dispute. Plaintiffs resist arbitration, contending the incorporated arbitration provisions apply only to members of the National Grain and Feed Association and not to nonmembers such as plaintiffs. Alternatively, plaintiffs contend that the arbitration agreement is invalid and that if it is not, the present dispute is outside the scope of the issues subject to the agreement.

I conclude that defendants' motion should be granted in its entirety. Plaintiffs' membership in the grain and feed association is irrelevant to application of the arbitration provision; the parties' contracts incorporated a mandatory arbitration requirement in their contracts; the arbitration agreement is valid; and the parties' dispute falls within its scope.

For the sole purpose of deciding this motion, I have found as fact the following rele-

vant allegations from the complaint, the counterclaim and the attachments to the parties' briefs.

## FACTS

Plaintiffs have a grain and soybean farming operation located in Janesville, Wisconsin. Defendant The DeLong Co. is a grain dealer located in Clinton, Wisconsin. Defendants William DeLong and David DeLong are citizens of Wisconsin and "principals, officers and directors" of defendant DeLong Co.

In late 1995, plaintiffs and defendant DeLong Co. entered into several "Grain Purchase" contracts. Each contract contained a provision stating that the contract "is made in accordance with the Trade Rules of the National Grain & Feed Association governing transactions in grain except as modified herein and both parties agree to be bound thereby." The trade rules to which the provision refers are contained in a booklet entitled, "Trade Rules and Arbitration Rules." The booklet begins with a "General Explanation of NGFA Trade Rules and Arbitration System," which specifies both that the "Grain Trade Rules ... govern all disputes of a financial, mercantile, or commercial nature involving grain" and that the "Trade Rules are the basis for the NGFA's Arbitration System." The "Preamble" to the trade rules states that the rules:

> shall govern all disputes of a financial, mercantile, or commercial character connected with grain ... arising between Active members of the National Grain and Feed Association, and shall be the basis of arbitration on such controversies, unless otherwise and specifically agreed to.

Rule 42 of the trade rules reads, in part, as follows:

> Arbitration: (a) Where differences between members of this Association cannot be amicably adjusted, said differences shall, at the request of either party, be submitted to the NGFA Arbitration Committee. (b) The decision of an Arbitration Committee of this Association shall be final except as provided in Section 9 of the Arbitration Rules.

The arbitration rules follow the trade rules in the booklet. Section one of the arbitration rules falls under the heading, "The Arbitration System Description and Purpose," and provides that the arbitration system is made up of three-person "National Arbitration Committees." Section three of the arbitration rules falls under the heading "Jurisdiction" and provides:

> (a) A National Arbitration Committee may properly consider a case involving a dispute between or among any of the following:
> (1) active members ... of the National Association....
> (2) Members ... and nonmembers, by consent of both parties or by court order. In the absence of a court order a case between a member and a nonmember may not be properly considered by the National Arbitration Committee without the consent of both parties. If the contract in dispute between a member and nonmember provides for arbitration by the National Association or under its Arbitration Rules, the parties to the contract shall be deemed to have consented to arbitration under these Arbitration Rules.

The "National Arbitration Committee" is defined in section four of the arbitration rules.

## OPINION

The Federal Arbitration Act represents "a strong federal policy favoring arbitration as a means of dispute resolution." *Morrie Mages & Shirlee Mages Foundation v. Thrifty Corp.*, 916 F.2d 402, 405 (7th Cir.1990). The act provides that a written agreement to arbitrate a dispute arising out of a contract or transaction involving commerce "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The question raised in this case is whether the arbitration provisions incorporated by reference into the hedge-to-arrive grain purchase contracts require a stay of proceedings pursuant to section 3 of the arbitration act, which provides for the stay of any action in federal court "upon any issue referable to arbitration under an agreement in writing for such arbitration," and an order

compelling arbitration pursuant to section 4 of the act, which provides that where one party has failed, neglected, or refused "to arbitrate under a written agreement ... the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4; *see also Morrie Mages & Shirlee Mages Foundation*, 916 F.2d at 406 ("Under the terms of the FAA, district courts have no discretion to refuse a request of a stay and shall direct the parties to proceed to arbitration on issues covered by an arbitration agreement.").

A determination of defendants' motion to stay proceedings and compel arbitration depends on the resolution of two related questions: 1) whether the parties entered into a valid and enforceable agreement to arbitrate; and if so, 2) whether the claims arising out of the present dispute fall within the scope of the claims they agreed to arbitrate. *See, e.g., AT & T Technologies Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) ("[W]hether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties.") (citation omitted). As to the first question, plaintiffs contend that when they signed the contracts they did not believe they were agreeing to the arbitration provision incorporated in the contracts because they do not belong to the National Grain and Feed Association. Alternatively, they argue that even if they should have understood they were agreeing to application of the provision, the provision is illegal and unenforceable either because the contracts as a whole are illegal or because the arbitration agreement fails to meet the requirements of 17 C.F.R. pt. 180. As to the second question relating to the scope of the arbitration agreement, plaintiffs contend the claims in this action are outside the scope of the arbitration agreement and that their claims against the individual defendants, William and David DeLong, are not covered by the agreement because these individual defendants were not signatories to the underlying contracts.

## A. Agreement to Arbitrate: Did the parties enter into a valid and enforceable agreement?

"An agreement to arbitrate is treated like any other contract." *Kresock v. Bankers Trust Co.*, 21 F.3d 176, 178 (7th Cir.1994) (citing 9 U.S.C. § 2). Therefore, it is necessary to decide as a matter of contract law whether plaintiffs agreed to arbitrate the claims involved in this dispute. *See R.J. O'Brien & Assoc. v. Pipkin*, 64 F.3d 257, 260 (7th Cir.1995) (" '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' ") (quoting *AT & T Technologies, Inc.*, 475 U.S. at 648, 106 S.Ct. at 1418).

■ Although plaintiffs do not dispute that a contract may incorporate by reference an arbitration clause from another document, *see, e.g., R.J. O'Brien & Assoc.*, 64 F.3d at 260 ("A contract ... need not contain an explicit arbitration clause if it validly incorporates by reference an arbitration clause in another document.") (citing cases), they contend that they did not agree to be bound by the arbitration provision in Trade Rule 42(a) because that rule applies by its own terms only to "members" of the association. Defendants do not dispute plaintiffs' assertion that they are not members, but contend that membership is irrelevant because the parties agreed to use the trade rules as the governing standard for their agreements. Defendants are correct. Parties are free to stipulate to any procedures they choose for the procedures governing the arbitration of their disputes, "short of authorizing trial by battle or ordeal or, more doubtfully, by a panel of three monkeys." *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 709 (7th Cir.1994).

If I were to accept plaintiffs' argument that their non-membership serves to exempt them from the arbitration clause, I would have to conclude that plaintiffs did not agree to be bound by any of the trade rules. Such a conclusion would be in direct contravention of the plain and unambiguous language in each hedge-to-arrive contract that the contract was being made "in accordance with the Trade Rules of the ... Association ... and

both parties agree to be bound thereby." *See Mastrobuono v. Shearson Lehman Hutton, Inc.,* ── U.S. ──, ──, 115 S.Ct. 1212, 1219, 131 L.Ed.2d 76 (1995) ("[A] document should be read to give effect to all its provisions and to render them consistent with each other."); *Paper Express, Ltd. v. Pfankuch Maschinen GmbH,* 972 F.2d 753, 755 (7th Cir.1992) ("In construing contracts, every provision should be given effect and the words should be read with their ordinary meaning.").

A similar "membership" argument was rejected by the Court of Appeals for the Seventh Circuit in *Paper Express, Ltd.,* 972 F.2d 753. A purchaser (the plaintiff) and a vendor had incorporated into their contract the following clause: "Warranty: 6 months according to the rules of VDMA and ZVEI." *Id.* at 754. The rules of the VDMA, a German machine manufacturer association, contained a rule regarding warranties and a forum selection clause that the purchaser did not wish to honor. The court held that when the parties agreed in the warranty section of their contract to apply the "rules of VDMA and ZVEI," they agreed to incorporate all of the VDMA rules, not just the warranty rule. *Id.* at 755. The court rejected plaintiff's argument that the rules did not apply because it was not a "qualified businessman" under the VDMA. Not only was the plaintiff wrong about his status under the rules, it could not escape their application. "Even if the VDMA rules do not apply *by their own force* to the transaction at issue here, the parties could still choose to incorporate them into their contract." *Id.* at 757 (emphasis in original).

Even though Rule 42 does not apply to the transactions between plaintiffs and defendant DeLong Co. by its own force, the parties "agree[d] to be bound" by the trade rules; no exception was made for Rule 42. Plaintiffs' non-membership in the National Grain and Feed Association is irrelevant to the application of Rule 42 or any other trade rule incorporated by reference into their contracts with defendants. *See Wilson Fertilizer & Grain, Inc. v. ADM Milling Co.,* 654 N.E.2d 848 (Ind.App.1995) (seller of grain who was not member of National Grain and

Feed Association agreed to arbitrate under Trade Rule 42 where buyer's confirmation order provided that "This Contract is also subject to the Trade Rules of the National Grain and Feed Association currently in effect").

Plaintiffs argue that even if they agreed that their underlying contracts were governed by the trade rules, they did not agree to subject their disputes to the National Grain and Feed Association's Arbitration Rules. In plaintiffs' views, these arbitration rules are separate rules not referenced in the parties' hedge-to-arrive contracts. Plaintiffs are mistaken. The trade rules make clear reference to the arbitration rules as the proper method for carrying out the compulsory arbitration required under Trade Rule 42.

Plaintiffs cite Arbitration Rule 3(a)(2) in support of their argument that there are distinctions between the two sets of rules, but in fact, this rule supports defendants' argument that the parties did not have to incorporate the arbitration rules expressly into the hedge-to-arrive contracts. Arbitration Rule 3(a)(2) provides that "[i]f the contract in dispute between a member and nonmember provides for arbitration by the National Association ... the parties to the contract shall be deemed to have consented to arbitration under these Arbitration Rules." By agreeing to be bound by Trade Rule 42, the parties agreed to arbitrate before the national committee.

■ Plaintiffs place great emphasis on their argument that their agreement to arbitrate should not be enforced because the hedge-to-arrive contracts are illegal futures contracts. However, this argument runs counter to a long line of cases, beginning with the Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), that hold that a court deciding a motion to arbitrate a dispute is limited to deciding only whether the arbitration agreement itself is invalid, illegal or unenforceable and is not free to evaluate the overall contract. *Id.* at 403–04, 87 S.Ct. at 1805–06 (because arbitration act requires court to compel arbitration once it finds agreement to

arbitrate is not in issue, court does not consider claims going to underlying contract) (citing 9 U.S.C. § 4); *see Colfax Envelope Corp. v. Local No. 458–3M*, 20 F.3d 750, 754 (7th Cir.1994) ("[C]ourts will not allow a party to unravel a contractual arbitration clause by arguing that the clause was part of a contract that is voidable;" party must show arbitration agreement itself is invalid) (citing *Prima Paint*, 388 U.S. at 406, 87 S.Ct. at 1807); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1280 (6th Cir.1990) (*Prima Paint* requires district court to "examine the arbitration clause in isolation from the rest of" the contract).

Plaintiffs argue that this case is not governed by *Prima Paint* because it involves underlying contracts that call for the commission of criminal acts (a void contract), while *Prima Paint* involved a claim that the underlying contract was fraudulently induced (a voidable contract), but this is a distinction without a difference. Application of the *Prima Paint* rule is not limited by the type of challenge that a party makes to the underlying contract. *See National Railroad Passenger Corp. v. Consolidated Rail*, 892 F.2d 1066, 1071 (D.C.Cir.1990) (whether contract calls for commission of illegal act or violates public policy is for arbitrator, not court, to decide; "if parties have validly agreed to submit a dispute to arbitration, we see no reason not to enforce that agreement"); *Lawrence v. Comprehensive Business Services Co.*, 833 F.2d 1159, 1162 (5th Cir.1987) (allegation that contract is illegal does not escape holding of *Prima Paint* because allegation of illegality does not go to validity of arbitration agreement itself). A party may not invalidate an arbitration clause by attacking the legality of the underlying contract containing that clause.

■ Plaintiffs make one last argument against enforcement of the arbitration agreement. As I understand it, the argument is this: the transactions in which defendants engaged in the context of the parties' hedge-to-arrive contracts were much riskier than transactions ordinarily anticipated by parties to normal hedge-to-arrive contracts. Indeed, they were so risky they amounted to the kind of transactions that must be guided and

governed by the Commodity Future Trade Commission's regulations. If the CFTC regulations should have applied to defendants' activities, then so too should the protections of the CFTC's arbitration regulations, 17 C.F.R. pt 180. According to plaintiffs, the arbitration regulations that are a part of plaintiffs' and defendants' hedge-to-arrive contracts are not as complete as the CFTC's arbitration regulations and therefore are void. *See, e.g., Felkner v. Dean Witter Reynolds, Inc.*, 800 F.2d 1466, 1468 (9th Cir. 1986) ("[F]or purposes of claims covered by the CFTC regulations, arbitration agreements that do not conform to section 180.3(b) are void."); *Nilsen v. Prudential–Bache Securities*, 761 F.Supp. 279, 286 (S.D.N.Y. 1991).

Close scrutiny of plaintiffs' argument reveals its lack of merit. Resolution of plaintiffs' claim would require the parties to prove precisely what defendants did or did not do and whether their actions fell within or without the scope of the contracts. These are the central issues of this case and are subject to arbitration in accordance with the parties' agreement.

Plaintiffs contend that *Marshall v. Green Giant Co.*, 942 F.2d 539 (8th Cir.1991), stands for the proposition that it is permissible to rule on the applicability of the CFTC's arbitration regulations even though doing so would require resolution of the central dispute in this case. In *Marshall*, the court of appeals noted that a district court is not "prohibited" from "addressing the arbitration clauses' enforceability merely because the issues involved may recur elsewhere in the case." *Id.* at 547. In this case, however, determining the applicability of 17 C.F.R. § 180.3 would amount to more than simply resolving an issue; it would amount to resolution of the entire case in violation of both the *Prima Paint* rule and the strong federal policy favoring arbitration of disputes.

B. *Scope of Arbitration Agreement*

1. *Is the parties' present dispute within the scope of the arbitration agreement?*

■ Once a valid arbitration agreement is found to exist, it is necessary to consider whether the dispute is within the scope of

that agreement. Agreements to arbitrate are construed liberally, in accordance with the strong federal policy favoring arbitration. The Federal Arbitration Act "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *see also Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 227, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (arbitration act establishes "federal policy favoring arbitration, requiring that we rigorously enforce agreements to arbitrate") (citations omitted). "[W]hen interpreting an arbitration clause, district courts must refer disputes to an arbitrator 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers that asserted dispute.'" *Morrie Mages & Shirlee Mages Foundation*, 916 F.2d at 406 (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)).

In this case, the arbitration provision is worded broadly, providing that "[w]here differences ... cannot be amicably adjusted, said differences shall ... be submitted to" arbitration. The term "differences" is limited only by the trade rules' preamble, which provides that the rules shall "govern all disputes of a financial, mercantile, or commercial character connected with grain." In arguing that this arbitration provision does not cover the parties' dispute, which arises out of and depends on resolution of the parties' rights, duties and obligations under the grain contracts, plaintiffs do not look to the broad language of their arbitration provision, but cite the language of the arbitration provision at issue in *Washburn v. Societe Commerciale de Reassurance*, 831 F.2d 149 (7th Cir.1987). That provision applied to disputes involving the underlying reinsurance agreement between the plaintiff insurance company and the defendant "with respect to the *interpretation* of this Agreement or the *performance* of the respective obligations of the parties under this Agreement." *Id.* at 150 (emphasis added). The dispute in *Washburn* involved a

complex, multifaceted conspiracy to defraud the insurance company through the use of several agreements, including the reinsurance agreement that contained the arbitration provision. *Id.* at 150–51. The court of appeals held that the dispute between the parties was outside the scope of the arbitration agreement because resolution of the dispute did not depend on interpreting the reinsurance agreement or determining whether the parties' performed their obligations under the reinsurance agreement. *Id.* at 151. "Even if every word of the reinsurance agreement were interpreted, this case would be no closer to a resolution." *Id.*

The *Washburn* decision is of no assistance to plaintiffs. The disputes are different. Unlike that in *Washburn*, the dispute in this case does depend on a resolution of the parties' rights, duties and obligations under the hedge-to-arrive contracts and, accordingly, is clearly within the scope of the parties' broadly worded arbitration agreement.

2. *Are the individual defendants entitled to arbitration?*

■ Citing *Morrie Mages & Shirlee Mages Foundation*, 916 F.2d 402, plaintiffs contend that defendants William and David DeLong cannot take advantage of the arbitration clause because they are not signatories to the hedge-to-arrive contracts. Plaintiffs argue that unless the issues raised by the claims against the nonsignatory defendants are "identical" to the issues raised against the defendant entitled to arbitration, the individual defendants are not entitled to a stay of the proceedings against them. In *Morrie Mages & Shirlee Mages Foundation*, the issue was whether the defendant (a guarantor of a note) was entitled to a stay of the suit against it by the creditor of that note pending an arbitration between the creditor and debtor regarding the same debt. *Id.* at 404. Although defendant had not signed the arbitration agreement, the court of appeals read § 3 broadly, holding that "[s]ection 3 ... plainly requires that a district court stay litigation where *issues* presented in the litigation are the subject of an arbitration agreement." *Id.* at 407. "[Defendant], as a party to litigation involv-

ing issues subject to an arbitration agreement, is entitled to a stay under section 3 of the FAA regardless of its status as a party to the arbitration agreement." *Id.* at 407.

As in *Morrie Mages & Shirlee Mages Foundation,* the individual defendants in this case are entitled to a stay of the proceedings against them under § 3 because the issues for arbitration in the case against defendant DeLong Co. are the same as those raised against defendants David and William De-Long. Only one count of plaintiffs' complaint is directed solely against the individual defendants. Plaintiffs have asserted a RICO claim, which plaintiffs characterize as arising from the individual defendants' "participation as racketeering defendants in the affairs of the corporate Defendant." Even this claim rests on the primary issue for arbitration: whether the hedge-to-arrive contracts are illegal.

Moreover, under § 4 of the arbitration act, David and William DeLong are entitled to an order compelling arbitration of the claims against them. Plaintiffs sued William and David DeLong as "principals, officers and directors" of the corporate defendant De-Long Co. None of the factual allegations in the complaint refers to any alleged action on the part of William or David DeLong not taken on behalf of defendant DeLong Co. Where "all of the alleged wrongful acts relate to the nonsignatory defendants' behavior as officers and directors or their capacities as agents" of the corporate defendant that signed the arbitration agreement, the nonsignatory defendants are entitled to arbitration of the claims against them. *Arnold,* 920 F.2d at 1281–82 (citing *Letizia v. Prudential Bache Securities, Inc.,* 802 F.2d 1185, 1187 (9th Cir.1986)) ("nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles") (citing cases).

Plaintiffs make one additional argument that must be addressed. According to plaintiffs, a public forum is necessary for resolution of their dispute because of the public policy concerns at issue, including facts that the federal government has unspecified liens on plaintiffs' farming operations and that the actions of defendants are alleged to disrupt the national public interest served by the Chicago Board of Trade. These concerns do not outweigh the Federal Arbitration Act's strong policy in favor of enforcing arbitration agreements. "[A] general public policy is not the type of external legal constraint that can make an arbitration clause unenforceable." *National Railroad Passenger Corp.,* 892 F.2d at 1070 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)).

I conclude that defendants are entitled to an order 1) compelling arbitration of this dispute under 9 U.S.C. § 4; and 2) staying this proceeding pending arbitration under 9 U.S.C. § 3.

### ORDER

IT IS ORDERED that the motion of defendants DeLong Co. and William and David DeLong to stay this action and compel arbitration is GRANTED. Further proceedings in this case are STAYED, pending arbitration of the claims in accordance with the terms of the agreement between the parties.